UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD A. DREISBACH<br><br>Plaintiff,<br><br>v.<br><br>APP PHARMACEUTICALS, LLC,<br>BAXTER HEALTHCARE<br>CORPORATION, HOSPIRA, INC.,<br>and JOHN DOES, 1 THROUGH 75<br>(fictitious)<br><br>Defendants. | Civil Action No. 3:10-CV-00419<br><br>(Judge Kosik)<br><br>**FILED**<br>**SCRANTON**<br>DEC 1 2 2013<br>PER _____ <br>DEPUTY CLERK |

## MEMORANDUM

Presently before the Court is Defendants' motion seeking reconsideration of the Court's Memorandum and Order of October 15, 2013 (Docs. 146, 147), denying Defendants' motions for summary judgment. For the reasons that follow, the Court will deny this motion.

### I. BACKGROUND

The relevant facts are set forth in the memorandum denying Defendants' summary judgment motions. (Doc. 146.) The Court notes that Defendants moved for summary judgment on all claims. (Docs. 97, 102.) The Court granted the motions as to Plaintiff's non-negligence claims and denied the motions with respect to his negligence claims.

Defendants argue that the Court made a manifest error in finding a dispute of material fact as to the causation element of this failure to warn case. They contend that the Plaintiff did not meet his burden of providing affirmative evidence of that element. Defendants further

1

contend that the Court's speculation as to the meaning of Dr. Harostock's testimony is not sufficient to create a genuine issue of material fact.

## II. Standard of Review

A motion for reconsideration is a device of limited utility. Its purpose is to correct manifest errors of law or fact, or to present newly discovered evidence. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Accordingly, a party seeking reconsideration must demonstrate at least one of the following grounds prior to the court altering, or amending, a standing judgment: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995).

## III. Discussion

In a failure to warn case, the plaintiff must show "that the manufacturer owed a duty to the plaintiff; that the manufacturer breached that duty; and such breach was the proximate cause of plaintiff's injuries." Salvio v. Amgen, Inc., 810 F. Supp. 2d 745, 752 (W.D. Pa. 2011) (citing Parkinson v. Guidant Corp., 35 F. Supp. 2d 741, 749 (W.D. Pa. 2004)). The plaintiff must establish proximate cause by showing that "had defendant issued a proper warning to the learned intermediary, he would have altered his behavior and the injury would have been avoided." Cochran v. Wyeth, Inc., 3 A.3d 673, 676 (Pa. Super. 2010) (quoting Demmler v. SmithKline

Beecham Corp., 671 A.2d 1151 (Pa. Super. 1996)). Additionally, under Pennsylvania law, a doctor must use his independent medical judgment in "determining whether a given drug is appropriate for a particular patient." Lineberger v. Wyeth, 894 A.2d 141, 150 (Pa. Super. 2006). "To create a jury question, the evidence introduced must be of sufficient weight to establish . . . some reasonable likelihood that an adequate warning would have prevented the plaintiff from receiving the drug." Cochran, 3 A.3d at 676.

Upon reconsideration, we find that there is no manifest injustice to prevent. The deposition testimony of Dr. Harostock, Plaintiff's treating physician, created a genuine issue of material fact. To create a jury question as to proximate cause, Plaintiff must introduce evidence of "sufficient weight" to establish a "reasonable likelihood" Dr. Harostock would not have re-administered heparin on February 18, 2008. The Court finds that Plaintiff met this burden. In his deposition testimony, Dr. Harostock stated he would "typically" be able to follow Plaintiff's proposed instructions to limit the duration of heparin to less than five days whenever possible.[1]

---

[1] The relevant deposition testimony is as follow:

Q: If, prior to your care of Mr. Dreisbach, defendant APP or defendant Baxter had issued a dear-healthcare-provider letter warning that the duration of heparin should be limited, whenever possible, to less than five days, is that the type of instruction that you believe would have made its way to you and – let's start there.

A: Yes. I have no reason to believe that would not have come our way because we use a lot of anticoagulation, including heparin.

Q: All right. And is that the type of instruction you would have been able to have followed if it had been given by APP or Baxter prior to your treatment of Mr. Dreisbach?

A: Or anybody for that matter, not just APP or Baxter.

Q: That's an instruction for limiting the duration of heparin to less than five days that you would typically be able to follow if it had been given?

3

Therefore, we find that a genuine issue of material fact as to proximate cause exists.

## IV. CONCLUSION

For the reasons set forth above, the Court will deny Defendants' Motion for Reconsideration (Doc. 148). An appropriate order is attached.

---

> A: Yes.
>
> Q: Another instruction for limiting the risk of heparin-induced thrombocytopenia that has been proposed by one of the experts that Mr. Dreisbach has retained is that if heparin has to be given for more than four days, that routine testing for heparin-induced antibodies should also be undertaken. Is that the type of instruction that, had it been given by Baxter and APP prior to the treatment of – your treatment of Mr. Dreisbach, that you believe would make its way to you?
>
> A: More than likely and would have actually more than likely become part of the hospital protocol. When heparin is administered here, to diminish the error rate, the pharmacy has developed a protocol to – as to the kind of testing that goes on with that. So that I'm sure that it would have made it to that protocol if the pharmacy was aware of it.
>
> Q: All right. And that would have then been implemented in your care of Mr. Dreisbach in 2008 had it been issued by APP or Baxter prior to your care of him?
>
> A: All right. You know, again, if it was made known and it became part of the hospital protocol, there would have been no questions asked about that.
>
> Q: By no questions asked, you mean no question it would have been implemented?
>
> A: It would have been implemented.
>
> Q: Including with the care of Mr. Dreisbach?
>
> A: True. Yes. If you'll notice, the heparin protocol – I mean, we follow the heparin protocol as it's written, you know, derived by the pharmacy, or the pharmacy and the therapeutics committee.

(Doc. 113, Ex. 26, Harostock Dep., 155:4-157:12.)

4